We have submitted this matter on two issues, the denial of Mr. Mendez's motion to suppress and his motion for violation of the speedy trial rights. I'd like to start with the speedy trial issue, Your Honors. This is a case in which there was an egregious we submit was an egregious violation. Mr. Mendez's motion to suppress and his motion Mr. Mendez was arrested on November 21, 2007, and was not brought to court on these matters in Oregon District Court until November 7 of 2011, four years past. The government in its briefing has essentially acknowledged that it's responsible for two years of that, however denies that they are responsible for the other two years. Additionally, it's the government's argument based upon Wickham that it really doesn't matter that there was a four-year delay. They're saying that based upon the speedy trial statute, 18 U.S.C. 3161, the only thing that matters is the time between when Mr. Mendez first appeared in Oregon in 2011 and when he went to trial, which was in January of 2012. We submit that that's wrong. Their reliance upon Wickham, while understood, is misplaced. I don't know that I necessarily need to go through the history of this case, but Mr. Mendez was initially arrested and appeared in the Washington District Court, U.S. District Court of Washington, in March of 2008. At that time, in that appearance, he also appeared on the Oregon charges. But the statute, I mean, I'm open to hearing what you have to say, but it just struck me that Wickham was just foreclosed this argument because we know the time, we know the precise day that your client appeared in the charging district. And it seems to me that the statute requires that in order for the clock to start running, right? We understood. We have, in our brief, we have relied upon Marin. And it's understood and we submit that there isn't anything that actually refutes the holding in Marin with regard to physical custody. I guess what the issue here, Your Honors, is simply that this straight reliance upon the point at which he appears in the district gives the government this incredible leeway, leeway which they've actually acknowledged that they made gross errors with regard to in terms of when someone appears. And I guess part of what we're asking this Court to do is consider Wickham and consider in light of this type of a case, specifically with regard to Mr. Mendez's case. I mean, we understand that with regard to the standards set forth by Baker v. Wing, that, you know, the Court is supposed to look at the four factors of the length of delay, the reasons for the delay. So your speedy trial argument claim is based on the Sixth Amendment, the Constitution, right? Correct. Not on the ---- No, on both, Your Honor. On both. On both. All right. On both. Looks like you might have a stronger argument based on the Sixth Amendment rather than on the ---- Well, again, we have argued that. We submit that that is part of it. You know, if you look at the Wingo factors, the last one, I think, is prejudice. Correct. How is he prejudiced? Well, here's the thing. I mean, there certainly is an abundance of case law. In U.S. v. Serena, they'll are real, in which there was a five-year delay. The Court found there that that five years, that there was an actual prejudice as a result of that five-year period of time. Here we're talking about a period of four years. From our standpoint, we're not seeing that there's a tremendous difference in terms of whether it be four years or five years. We can't ---- and I agree, Your Honor. I cannot point to a specific issue here where I can say that there was any real prejudice. That's right. Okay. But there clearly was this tremendous delay. And I think the Court has to look at all four factors in this ---- in a situation like this in terms of what was going on with the defendant during that period of time. Okay. Essentially, I mean, this is a situation where an individual has been placed as clearly in legal limbo as I can possibly conceive. And it just seems like there is ---- He was in custody on other matters. That's correct, Your Honor. That's correct. But there is no ---- and I don't think the government is denying that when he was arrested and when he was originally brought to court in Washington, fully aware of the Oregon charges, in fact, had been indicted on the Oregon charges. And it was just a matter of ---- and as far as the history of the case is concerned, initially there is a Rule 5 waiver. Subsequently, and there was ---- Well, they were aware of it. Everybody acknowledges it. Okay. So, I mean, again, this, you know, it wasn't until 2009. It slipped through the cracks, as they say here in Oregon, whatever. Right. Right. Until he brought it to their attention. Right. Well, that's not actually clear. I thought there was some effort on ---- I thought the U.S. attorney on her own attempted to bring him here. I'm not ---- I may be just speculating. I'm not sure about that. He did alert them. He did, yes. He did. Yeah. It's finally, I mean, it's finally a situation where Mr. Mendez is sitting in jail wondering what's happened to this case. The other issue that is ---- the other issue that we brought before the Court is with regard to the motion to suppress. And we have submitted that there are three separate factors that the Court needs to consider. The first one, and again, we will acknowledge right now that there is a matter of disputed facts with regard to Mr. Mendez's Miranda rights. I mean, we have Mr. Mendez stating that he invoked his rights at least three times, and it's during this period of time that the arresting authorities, initially the Pierce County sheriffs, are questioning him, that he indicates that he doesn't want to talk. He actually makes a statement, at least in his testimony, makes a statement that he's a con and knows that he either give him ---- I think the line is something like either give him a bed or give him an attorney. So that's his position. Again, we know that the sheriffs that were involved in this case dispute that. More specifically, though, we're looking at, we're asking the Court to consider under 18 U.S.C. 3501 whether or not there was a violation that he wasn't brought before a magistrate. And I think the evidence is clear that it was at least 10 hours until he was brought before the magistrate. There isn't anything in the record that would establish why there was that delay other than the fact that it appears that the State authorities were trying to make sure that the FBI had a chance to talk to Mr. Mendez. Well, maybe you can address that point, because it seems to me that's what this argument comes down to. You've got to show that they were colluding with their Federal counterparts. So what evidence? So here's what we know. They arrested Mr. Mendez based upon a tip, a tip that he was a bank robber in Washington, Oregon, and California cases. So right away we know that there is by, at the very least by inference, Federal involvement in this case. It appears that they are questioning, he's not, at the very least he's nonresponsive at that point. We are aware that they arrested him at a hotel in Tacoma. It was at a family function. There is then this attempt to get his cooperation, get his statement in which they are telling the Mr. Mendez that if he doesn't make a statement, they're going to be going down, they're going to be talking to his family. And it's only at that point, it's only at that point where, one, they have brought the FBI into the matter, and two, that they are essentially threatening to bring his family into his situation, that he finally decides, okay, I'm going to talk. Again, this is substantially later than it should have been. That is what, in fact, I mean, are we going to get the officers to say that, yes, I, you know, I spoke to the FBI and I was talked to the way. But he was being held ostensibly on State charges. So, I mean, if we just focus on that period, there's no timing issue. That's what I'm saying. You've got to show that the he really wasn't being held just on the State charges, that they were intentionally delaying, I guess. But that's the point. I mean, that's almost this impossible situation that we're placed in, sort of, you know, basically trying to prove a negative. Because here's what's up. We know that this was a situation in which the tip was based upon this is the guy that committed these bank robberies. So they know. They know that that's what they're not coming in. Yes, they find some drugs in his pocket. But that's not why they came to get him. That's not why they arrested him in the first place. Do they use the State charges as an excuse? We argue that that's exactly what happens. They're using it as an excuse to hold him until the FBI agent Treat can appear and start talking to him about these other matters, the matters that they really want to involve him in. Your Honor, there's a recent case, a very, very recent case from this Court, U.S. v. Pimentel. It came out June 24th, 2000. Speak up a little, please. I'm sorry. There's a recent case, U.S.A. v. Pimentel. It came out about two weeks ago, June 24th, 2014. And it speaks to you. Can I ask, did you submit a 28J letter on this? I did not. Okay. Can you spell the name of the case, then? Its last name is P-I-M-E-N-T-A-L. Okay. And its docket number 1250038, June 24th, 2014. That case is, well, not completely on all fours, is critical in terms of discussing this delay issue. That was a case in which an individual gets arrested. There is no reason why he's not brought before the magistrate for four days. He's arrested on a Friday, does not appear in front of a magistrate until the following Monday. In that case, the Court could not find any legitimate reason why this delay occurred. And we submit. You like that case? Excuse me? You like that case? I do, and I understand it's Your Honors. I need a booze today. Okay. Yes. If I didn't mention, it is Judge Perguson's. Again, there is abundant similarity here between what happened with regard to Mr. Mendez and what happened in that case. The other thing that we bring, and that's sort of the last point before I reserve a little bit of time, is with regard to the voluntary hearing, the voluntariness hearing. The government submits that Mr. Mendez had a full and ample opportunity to address for these issues to be addressed with regard to the 10-day delay, or the 10-hour delay. We submit that there's actually sort of a turnaround here, and again, it goes back to that issue with regard to the Miranda rights. It would appear, and again, you know, this is obviously a matter of, I wasn't the interpretation of the record, but it appears that the court found these credibility issues right away, decided that the officers were more credible than Mr. Mendez, and so there was, things kind of got turned around there, and rather than the burden being placed on the government to assert that the Miranda rights were not voluntarily abridged, it seems a situation where Mr. Mendez was forced to argue that they were. So I would reserve the balance of my time. Okay. Thank you. We'll hear from the government. May it please the Court. My name is Amy Potter, and I represent the United States. I'm here in this matter in the first instance to admit that we made a mistake. We failed to bring the defendant out of BOP custody for almost two years after he was sentenced in the Washington case. But I'm also here before you to say despite that mistake, the most serious sanction of dismissal of the indictment in this case involving four bank robberies with four victim tellers was not warranted, because there was no actual prejudice to the defendant in this instance. He was serving a state sentence, I mean, a federal sentence. He was not being held in indeterminate pretrial custody. The district court specifically gave him credit at sentencing for those two years. He subtracted it from the low end of the guidelines and specifically notes in the sentencing transcript he's giving him credit for those two years. Could you just speak a little louder, please? I apologize, Your Honor. No, that's okay. Can you hear me now, Your Honor? Yeah. All right. Again, I apologize. No, that's all right. Okay, don't worry about it. The district court specifically reduced the sentence by two years and then imposed it concurrent to the undischarged term of imprisonment. And in terms of the other two issues that were related to the prejudice, there were some medical records presented. The district court reviewed those and found there was no evidence in those records that it was specifically related to the delay in bringing him to Oregon. In fact, one of them was after he was already here in Oregon. And again, he was in a ‑‑ I think the district court used the term obese male with heart problems, and those records related to the heart problems. And the final issue, there was a reference to a potential exculpatory or alibi witness by the name of Leslie, a woman who in his own confession, he said, had no involvement in the robberies. He provided almost no detail on how he would find her even two years prior. And given the surveillance videos that directly linked him to those robberies, there's no evidence that there was any true alibi witness to be found. So on the Speedy Trial Act itself, Wickham controls. He was given a trial well within the 70 days of his initial appearance in Washington in Oregon on November 7, 2011. And in terms of the Sixth Amendment issue, the district court properly found there was a four‑year delay from initial arrest to trial. He analyzed all those prongs under Barker. He in fact found the government negligence on this fact, and we don't dispute that. And he then turned around and found that there was no actual prejudice and the indictment should stand. There was also separately a hearing on the statements in this case. And I do want to correct the record as to what happened in his arrest. There was a callout to Officer James, and he testifies at the suppression hearing. And the callout was that there's an outstanding warrant out of California. He believed, Officer James testified, that it had to do with a robbery. It was in fact a parole violation for a 1998 bank robbery. It was not an active robbery, and there's no mention of the Oregon or Washington robberies at that point. They go to the Shiloh Inn and they arrest him on this outstanding California warrant. And while they're arresting him and doing a pat down, they find methamphetamine, which leads to additional state charges. But what is very clear is that Officer James testifies. He takes him to booking. He delivers them, and that's where we have the original rights form that Officer James himself's rights refused on. And it's after the booking and after he's left the booking area that Officer James testifies that he thinks that Mr. Mendez, who he just booked into jail, might look like a wanted defendant in the flyers that they had received during their call. So they had received a flyer that said, hey, we're looking for this person in these surveillance photos. So he goes back and he says he pulls up those flyers, and he looks at them, and he says, wow, that definitely looks like Mr. Mendez. And at that point, he emails Detective Anders, who is a detective with Tacoma PD, and says, I think that I just booked in your possible suspect. Sometime around 730, so this is about 115 in the morning. Sometime around 730 a.m., Detective Anders looks at those photos himself. He says, I agree, I think it looks like him. And he calls Second Detective Woods, who works for Pierce County Sheriff's Office. Detective Woods also views the surveillance and the booking photo, thinks it's the same person. And then we have the contact, and this is all around 730. We don't have an exact time. But around 730 in the morning, then they reach out to FBI agent Treat, who is an FBI agent in Washington, who participates. There is a task force, it appears from the record, dealing with robberies, and particularly with respect to bank robberies, they call in the FBI. So at that point, that's the first indication of any involvement of federal authorities. And again, he's been booked in on an outstanding state parole warrant and new state charges related to the methamphetamine. There's no robbery charges against Mr. Mendez for those Oregon or Washington charges at this point. At that point, they decide that their first step is to go to the Shiloh Inn to determine they had reason to believe there might have been accomplices, because he's seen driving away some of the surveillance, to check out, could these people who might still be at the Shiloh Inn be accomplices. They go there, they conduct that interview, decide they're not likely involved, and then return to the jail, and approximately 1045 in the morning, they begin their interview with Mr. Mendez by re-informing him of his rights. So at the earliest, we have 730 a.m. as the involvement of federal charges. What time does he make his first appearance before the magistrate? He doesn't make an appearance before a federal magistrate until March of the following year. So this is November. We do not have in the record when he appears in Pierce County on state charges. It's also unclear at some point between November 21st and March 2008 when he appears on the Washington charges, state robbery charges are brought against Mr. Mendez, presumably after those interviews. We do not have it in the record when those charges, state robbery charges were brought or when he made his state appearance on that. But he doesn't make a federal appearance until March. Presumably, those state robbery charges are dismissed, a detainer is placed, and he is moved into federal custody, which is a typical practice in these cases when both the state and the federal government have potential charges. We believe that the record is clear. The district court made very clear that the burden is on the government to prove by preponderance of the evidence that the confession was voluntary. The district court heard all of the evidence, and he made a finding that the government witnesses were more credible than defendant. That finding was not clear error. And those credibility findings are accorded special deference. And in this case, there's nothing in the record to support reversing the district  court. Similarly, in terms of all the findings with respect to the Speedy Trial Act, the factual findings were not clear error either. So unless the court has further questions, the district court should be affirmed in this matter. Roberts. Thank you, counsel. Any rebuttal? Unless the court has questions, we will address final briefs. Thank you. Thank you. Thank you, counsel. We appreciate your arguments, and the matter will stand submitted.
judges: PREGERSON, PAEZ, WATFORD